United States District Court
For the Northern District of California

1
2
3
4
5               UNITED STATES DISTRICT COURT
6               NORTHERN DISTRICT OF CALIFORNIA
7
8    MARK HAINES,                              No. C-11-1335 EMC
9              Plaintiff,
                                               **ORDER GRANTING IN PART AND
10        v.                                    DENYING IN PART DEFENDANTS'
                                               MOTION TO DISMISS**
11   DARYL B. BRAND, *et al.*,
                                               **(Docket Nos. 25, 29)**
12             Defendants.
     _____/
13
14
15        Plaintiff Mark Haines filed suit against the City of Berkeley and a number of its employees

16   alleging common law and federal and state constitutional claims arising from his involuntary

17   detention for psychiatric evaluation pursuant to California Welfare & Institutions Code § 5150.

18   Pending before the Court are Defendants' motions to dismiss.  Docket Nos. 25, 29.[1]

19        For the reasons set forth below, the Court **GRANTS in PART** and **DENIES in PART** the

20   motions to dismiss.

21                  I.    **FACTUAL & PROCEDURAL BACKGROUND**

22        In his pro se complaint, Plaintiff alleges as follows.  Plaintiff is an "unemployed

23   impoverished transient who routinely sleeps in his car."  First Amended Complaint ("FAC"), Docket

24   No. 15, ¶ 14.  At 5:45 p.m. on December 4, 2009, Plaintiff went to the Berkeley Free Clinic ("BFC")

25   in response to an advertisement for "peer counseling."  FAC ¶¶ 17, 19.  He was seeking assistance

26   from the counselor in obtaining food and resolving his exhaustion, respiratory infection, and other

27   _____

28        [1]  The Court has already vacated the hearing on this matter per Plaintiff's request.  Docket
     No. 38.

1  maladies afflicting him due to his circumstances.  FAC ¶¶ 21-22.  He also hoped to discuss his

2  anxiety stemming from emotional trauma.  FAC ¶ 23.  Plaintiff was informed that no peer counselor

3  was available, and he waited for a counselor.  FAC ¶¶ 28-30.

4       As Plaintiff waited, police officers arrived at the Clinic, one of whom Plaintiff alleges

5  prevented him from leaving and told him to "stay inside" when Plaintiff attempted to go outside to

6  smoke a cigarette. FAC ¶¶ 34-43.  Defendant Daryl Brand then arrived and escorted him to an

7  interview room along with the officers.  FAC ¶¶ 48-54.  Plaintiff believed he was under arrest.  FAC

8  ¶ 62.  Brand asked Plaintiff questions and informed Plaintiff that there was concern he "might want

9  to hurt [himself]."  FAC ¶¶ 58-60.  Plaintiff confirmed that he had come to the clinic "for help"

10  regarding "emotional issues," but thereafter refused to answer further questions from Brand and

11  refused to sign a "contract for safety," asserting that he required a lawyer before signing anything

12  and that he had a "right to remain silent."  FAC ¶¶ 67-69, 78-82.  After further attempts to engage

13  Plaintiff in conversation and get him to sign the contract for safety, Brand then applied for Plaintiff's

14  involuntary psychiatric examination under California Welfare and Institutions Code § 5150.  FAC ¶¶

15  83-102.  Plaintiff asserts that Defendant Brand subjected him to police detention and psychiatric

16  evaluation without probable cause.  FAC ¶¶ 157-58.

17       Plaintiff was searched and escorted outside the clinic to an ambulance parked outside.  FAC

18  ¶¶ 100-11.  His pocket knife was seized.  FAC ¶ 107.  Plaintiff was then taken to Alta Bates

19  Hospital, where he was held and offered food, and where staff asked him further questions and drew

20  his blood over his objections.  FAC ¶¶ 112-28.  He was later transferred early Saturday morning,

21  December 5, 2009, to the John George Psychiatric Pavilion.  FAC ¶ 135.  At about 5:30 a.m. that

22  day, Dr. Schwartz interviewed Plaintiff and told him he was "free to go."  FAC ¶¶ 141-43.  He was

23  released at 6:00 a.m.  FAC ¶ 144.

24       Plaintiff asserts causes of action under the First, Fourth, Fifth, and Fourteenth Amendments

25  (both Due Process and Equal Protection), as well as causes of action for negligence, intentional

26  infliction of emotional distress, and violations of Article I, §§ 1 and 13 of the California

27  Constitution.  He seeks declaratory relief, injunctive relief, nominal, compensatory, and exemplary

28  damages, and attorney's fees and costs.  FAC at 31-32.

1    All Defendants besides Defendant Brand filed a combined motion to dismiss Plaintiff's

2    complaint under Rule 12(b)(6).  Docket No. 25.  Defendant Brand separately filed a motion to

3    dismiss under 12(b)(6) as well.  Docket No. 29.

4                                              **II.  DISCUSSION**

5    A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim,

6    facilitating dismissal to the extent the pleading fails to state a claim upon which relief can be

7    granted. Fed. R. Civ. P. 12(b)(6).  "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short

8    and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

9    defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp.*

10   *v. Twombly*, 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  The pleading is construed

11   in the light most favorable to the non-moving party and all material allegations in it are taken to be

12   true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir.1986).  A 12(b)(6)  motion should be granted

13   "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

14   which would entitle him to relief,' construing the complaint in the light most favorable to the

15   plaintiff." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir. 2004) (quoting *Conley v.*

16   *Gibson*, 355 U.S. 41, 45-46 (1957)).

17   However, even under the liberal pleading standard of Federal Rule of Civil Procedure

18   8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than

19   labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

20   *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal brackets and

21   quotation marks omitted)).  Hence, the Court need not assume unstated facts, nor will it draw

22   unwarranted inferences. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("Determining whether a

23   complaint states a plausible claim for relief . . . [is] a context-specific task that requires the

24   reviewing court to draw on its judicial experience and common sense."); *Cousins v. Lockyer*, 568

25   F.3d 1063, 1067 (9th Cir. 2009); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

26   2001) ("Nor is the court required to accept as true allegations that are merely conclusory,

27   unwarranted deductions of fact, or unreasonable inferences.").

28

**United States District Court**
For the Northern District of California

Under *Twombly*, a plaintiff (or counterclaimant) must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . .  When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted).  In sum, if the facts alleged foster a reasonable inference of liability - stronger than a mere possibility - the claim survives; if they do not, the claim must be dismissed. *See Iqbal*, 129 S. Ct. at 1949-50.

Ordinarily, a pro se complaint will be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The pro se complaint will be dismissed only if it appears "beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Pena*, 976 F.2d at 471 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  As the Ninth Circuit has recently clarified, courts "continue to construe pro se filings liberally when evaluating them under *Iqbal*. While the standard is higher, our 'obligation' remains, 'where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)).  However, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure.").

///

///

///

United States District Court

For the Northern District of California

A.      Defendants' Motions to Dismiss

         1.      Defendants Meyerson and Tribble

         Defendants argue that Meyerson and Tribble–named in the Third and Ninth Causes of Action (Fifth Amendment and Equal Protection, respectively)–should be dismissed from the action entirely because neither was in a position of management over the mobile crisis staff during the relevant time period.  *See* Mot. at 6.  Plaintiff responds that these 2 defendants are the current managers, and therefore will be bound by any prospective relief ordered by the Court.  *See* Opp. at 6.  Plaintiff concedes, however, that neither defendant played any "known part in causing Plaintiff's injuries." Opp. at 17.  Thus, it is undisputed that Plaintiff cannot state a claim against these Defendants in their personal capacities.

         As for any official-capacity liability, Defendants are correct that Meyerson and Tribble are unnecessary parties and, in the absence of allegations directed at them specifically in their personal capacities, the only claim against them would be for prospective relief.  However, the proper defendant for purposes of injunctive relief in a § 1983 action is the City itself.  *See* Reply at 3 ("Certainly, should the Court decide that the City may be issued injunctive orders, such an injunction can issue against the City without including these two defendants in the lawsuit.").  Thus, these defendants are unnecessary parties for purposes of prospective relief as Plaintiff can simply name the City of Berkeley in their place (as he has already done).  *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official capacity actions against local government officials [because] under *Monell*, . . . local government units can be sued directly for damages and injunctive or declaratory relief."); *Soffer v. Costa Mesa*, 798 F.2d 361, 363 (9th Cir. 1986) ("After *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978), . . . suit may be brought directly against a local governmental unit, rendering suit against the individuals unnecessary unless they are sued in their personal capacity."); *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) ("A suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself.").  An "official capacity" suit against Meyerson and Tribble would therefore only duplicate Plaintiff's claim against the City, as they both depend on the same theory of liability.  *Rojas v. Sonoma County*, No. C-11-1358 EMC, 2011 WL 5024551, at *2 (N.D.

5

**United States District Court**
For the Northern District of California

1  Cal. Oct. 21, 2011) ("Because Sheriff Freitas is being sued in his official capacity only, the claim

2  against him amounts to a claim against the County. Accordingly, the Court dismisses the § 1983

3  claim against Sheriff Freitas as duplicative of the claim against the County."); *Vance v. County of*

4  *Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("The Court follows other District Courts in

5  holding that if individuals are being sued in their official capacity as municipal officials and the

6  municipal entity itself is also being sued, then the claims against the individuals are duplicative and

7  should be dismissed.") (citing *Carnell v. Grimm*, 872 F. Supp. 746 (D. Haw.1994)); *Luke v. Abbott*,

8  954 F. Supp. 202, 203 (C.D. Cal. 1997) ("[W]hen both an officer and the local government entity are

9  named in a lawsuit and the officer is named in official capacity only, the officer is a redundant

10  defendant and may be dismissed.").

11  　　　　Accordingly, the Court GRANTS the motion to dismiss as against Meyerson and Tribble

12  with prejudice.

13  　　　　2.　　　Underline: City of Berkeley Under § 1983

14  　　　　Defendants next argue that Plaintiff cannot state a claim against the City for any causes of

15  action arising under § 1983.  Plaintiff has included the City in his First (Fourth Amendment),

16  Second (First Amendment), Third (Fifth Amendment), and Ninth (Equal Protection) Causes of

17  Action.

18  　　　　First, Defendants contend that the City cannot be held liable under a *respondeat superior*

19  theory of liability.  Mot. at 7 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

20  Defendants are correct under § 1983 that the City "cannot be held liable solely because it employs a

21  tortfeasor."  *Monell*, 436 U.S. at 691.  Instead, Plaintiff must allege an "official municipal policy of

22  some nature [that] caused a constitutional tort."  *Id.*  Thus, generally "the actions of individual

23  employees can support liability against a municipality under § 1983 only if those employees were

24  acting pursuant to an official municipal policy."  *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir.

25  2003) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (stating that "[t]he 'official

26  policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of

27  the municipality") (emphasis in original)).  However, Plaintiff can also allege City liability based on

28  its employees' actions under two alternative theories:  (1) "if an employee commits a constitutional

**United States District Court**
For the Northern District of California

1   violation pursuant to a long-standing practice or custom"; or (2) if "the person causing the violation

2   has final policymaking authority." *Del Conte v. San Francisco Police Dept.*, No. C 06-05030 JSW,

3   2009 WL 2871052, at *2 (N.D. Cal. Sept. 1, 2009) (quoting Webb, 330 F.3d at 1163-64).  A claim

4   on the basis of City custom may include a custom of inaction or omission, such as a failure to train,

5   if the failure to train amounts to deliberate indifference of the plaintiff's rights. *See City of Canton

6   v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a failure to train reflects a 'deliberate' or

7   'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be liable

8   for such a failure under § 1983.").

9       The Ninth Circuit has previously held that a plaintiff need only make "a bare allegation that

10   the individual [defendants'] conduct conformed to official policy, custom, or practice," in order to

11   survive a motion to dismiss. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th

12   Cir.1988); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*,

13   507 U.S. 163, 168 (1993) (rejecting a heightened pleading standard for municipal liability claims).

14   However, there is significant confusion among the courts as to whether these forgiving pleading

15   standards are still good law after *Iqbal* and *Twombly*. *Compare, e.g.*, *Young v. City of Visalia*, No.

16   1:09-CV-115 AWI GSA, 2009 WL 2567847, at *6 (E.D. Cal. Aug. 18, 2009) ("In light of *Iqbal*, it

17   would seem that the prior Ninth Circuit pleading standard for *Monell* claims (i.e. "bare allegations")

18   is no longer viable."), *with, e.g.*, *Carnes v. Salvino*, No. CV-08-1846 PHX GMS, 2009 WL 2568643,

19   at *5 (D. Ariz. Aug. 18, 2009) ("In [the Ninth Circuit], a claim of municipal liability under §§ 1983

20   is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare

21   allegation that the individual officers' conduct conformed to official policy, custom, or practice.")

22   (citations and quotations omitted); *see also Gearin v. Rabbett*, No. 10-CV-2227 (PJS/AJB), 2011

23   WL 317728, *9, *10 (D. Minn. Jan. 28, 2011) (noting the inherent conflict between *Leatherman* and

24   *Iqbal/Twombly* but finding that, because *Twombly* cited to *Leatherman*, court was still bound to

25   apply *Leatherman*).

26       The Ninth Circuit has yet to consider this question directly, though a recent decision

27   confirmed that, at a minimum, any complaint "may not simply recite the elements of a cause of

28

**United States District Court**
For the Northern District of California

1    action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the

2    opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

3    However, recent decisions have also held that only minimal specificity is required,

4    particularly in view of the fact that the defendant is likely to hold greater access to relevant evidence

5    as to its policies, customs and practices. *See Wiek v. Keane*, No. 09 CV 920, 2010 WL 1976870, at

6    *4 (N.D. Ill. May 12, 2010) (finding sufficient allegations that "officers held him pursuant to a City

7    policy allowing police officers to 'hold an arrestee overnight so that the arrestee could be exhibited

8    in a corporeal identification procedure'" because "[t]here is nothing more [plaintiff] can allege" and

9    "[h]e is not required to provide extrinsic evidence that a policy existed"); *Maldonado v. Racine*

10   *County*, No. 09-C-1173, 2010 WL 1484235, at *3 (E.D. Wis. Apr. 12, 2010) ("Although Racine is

11   correct in stating that Maldonado does not present any supporting facts to establish that such a

12   policy actually exists, . . . such pleading is not required."); *Thomas v. City of Galveston*, No.

13   H-10-3331, 2011 WL 3290317, at *13 (S.D. Tex. Aug. 1, 2011) ("In the context of municipal

14   liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have

15   access to (or personal knowledge of) specific details regarding the existence or absence of internal

16   policies or training procedures prior to discovery.  Accordingly, only minimal factual allegations

17   should be required at the motion to dismiss stage."); *Kelly v. Spokane Airport Bd.*, No.

18   CV-10-0312-LRS, 2011 WL 204867, 4 (E.D. Wash. Jan. 20, 2011) ("Plaintiff is not required at this

19   stage in the litigation to state with any extra specificity the nature and extent of this de facto policy

20   by Defendant.").

21   In the instant case, the Court finds that Plaintiff has sufficiently alleged conduct pursuant to

22   City policies or customs.[2]  While Plaintiff's complaint is not a model of clarity, he states that the

23   City (and other defendants) "failed or refused to adequately fund, employ, train, supervise, evaluate

---

24

25      [2] The Court notes that portions of Plaintiff's FAC appear to demonstrate an absence of the
    kind of official policy that would support municipal liability, as he asserts that Brand and other

26   individual defendants departed from or contradicted official policy in violating his rights, rather than
    acting pursuant to any policy.  *See* FAC ¶¶ 207-08, 210, 214-15, 224-25, 242, 244.  However, that

27   one policy may be "official" on the books does not preclude an allegation of a de facto policy or
    custom that controls in practice.  *See Dwyer v. City of Corinth*, No. 4:09-CV-198, 2009 WL

28   3856989, at *8 (E.D. Tex. Nov. 19, 2009) (denying motion to dismiss complaint alleging de facto
    policies that conflicted with official policies).

United States District Court

For the Northern District of California

1  or discipline [Mobile Crisis Team ("MCT")] members as to their response to persons seeking

2  sources of physical sustenance and desiring to obtain lay counseling who, while detained by police,

3  do thereafter assert their fundamental rights when approached and questioned by MCT members."

4  FAC ¶ 161.  He also alleges that "[a]t no relevant time did the MCT have adequate resources and

5  relevant training necessary to properly assess every traumatized person within the City of Berkeley,"

6  FAC ¶ 247, and that Plaintiff and others like him "are customarily targeted by the Telegraph team

7  for police detentions prior to face-to-face assessment," FAC ¶ 251.  These allegations are

8  sufficiently specific to identify a relevant policy or custom.  *See, e.g.*, *Von Haar v. City of Mountain

9  View*, No. 10-CV-02995-LHK, 2011 WL 782242, at *5 n.2 (N.D. Cal. Mar. 1, 2011) (denying

10  motion to dismiss where Plaintiff "alleges that Mountain View 'maintained a practice and custom'

11  of failing to adequately train its officers, and Plaintiff identifies three specific areas in which

12  Mountain View's training was deficient," despite the fact that "the FAC does not allege that the City

13  of Mountain View was motivated by deliberate indifference or that the failure to train reflected a

14  deliberate or conscious choice by the City"); *Carnes v. Salvino*, No. CV-08-1846-PHX-GMS, 2009

15  WL 2568643, at *5 (D. Ariz. Aug. 18, 2009) (denying motion to dismiss where plaintiff alleged that

16  "the County had a policy, custom, or practice of failing to instruct, supervise, and control its officers,

17  [] that these failures happened on a 'continuing basis,'" that "these policies or practices amounted to

18  a failure 'to prevent or aid in preventing' the alleged wrongs to Plaintiff and that the County acted

19  'intentionally, knowingly, or with deliberate indifference to the rights of others'").

20         While Plaintiff's complaint fails to include the boilerplate language of deliberate indifference

21  with respect to the City, under *Iqbal* such conclusory language would arguably not add much, if any,

22  substance to the current complaint.  *See, e.g.*, *Anderson v. City of Blue Island*, No. 09C5158, 2010

23  WL 1710761, at *2 (N.D. Ill. Apr. 28, 2010) (denying motion to dismiss where plaintiff alleged that

24  the city "acted with deliberate indifference in failing to train its police officers to respect the

25  constitutional rights of mentally ill arrestees despite the frequency with which Blue Island police

26  officers would confront persons suffering from mental illness"); *Von Haar*, 2011 WL 782242 at *5

27  n.2 (denying motion to dismiss despite lack of allegation of deliberate indifference).  Rather, as in

28

**United States District Court**

For the Northern District of California

1  *Anderson*, it is the specific language pertaining to what Defendants have done or failed to do that is

2  important.  In that respect, Plaintiff has identified specific alleged failures.

3      In addition to the allegations specifically identifying the City, Plaintiff also alleges that

4  certain individual defendants acted pursuant to policies and practices that Plaintiff does not directly

5  tie to the City.  *See* FAC ¶¶ 172-75, 178, 180-82, 234-40.  However, as explained above, while the

6  City cannot be held liable merely for its employees' illegal conduct, it can be liable for the

7  constitutional violations of officials who are "final policymakers."  This liability can stem from

8  direct violations by those policymakers or from violations by subordinates that are ratified by the

9  policymakers.  *See Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).  "Whether a

10  particular official has final policy-making authority is a question of state law."  *Id.*

11      In the instant case, Plaintiff's allegation that defendants Medrano, Tureck, and Wee were

12  "directly responsible" for the Department of Health Services, the Mental Health Division, and the

13  training and supervision of the Mobile Crisis Team, is not sufficient to establish they had final

14  policy-making authority over the policies and practices at issue.

15      Nonetheless, the Court concludes that, while Plaintiff's complaint is not the model of perfect

16  pleading, it states allegations sufficient to state a claim of municipal liability under *Monell*.

17  Defendants' motion to dismiss the City as a defendant for failure to allege a policy, custom or

18  practice is therefore DENIED.  The Court thus proceeds to examine the viability of Plaintiff's causes

19  of action.

20      3.      First Cause of Action – Fourth Amendment (Against City, Brand, Wee, Tureck, and

21          Medrano)

22      Defendants argue that Plaintiff has failed to state a claim under the Fourth Amendment.

23  Section 5150 of the California Welfare and Institutions Code provides as follows:

24          When any person, as a result of mental disorder, is a danger to others,
           or to himself or herself, or gravely disabled, a peace officer, member
25          of the attending staff, as defined by regulation, of an evaluation
           facility designated by the county, designated members of a mobile
26          crisis team provided by Section 5651.7, or other professional person
           designated by the county may, upon probable cause, take, or cause to
27          be taken, the person into custody and place him or her in a facility
           designated by the county and approved by the State Department of
28          Mental Health as a facility for 72-hour treatment and evaluation.

United States District Court
For the Northern District of California

1

2

3

4

5

6

> Such facility shall require an application in writing stating the circumstances under which the person's condition was called to the attention of the officer, member of the attending staff, or professional person, and stating that the officer, member of the attending staff, or professional person has probable cause to believe that the person is, as a result of mental disorder, a danger to others, or to himself or herself, or gravely disabled. If the probable cause is based on the statement of a person other than the officer, member of the attending staff, or professional person, such person shall be liable in a civil action for intentionally giving a statement which he or she knows to be false.

7   Involuntary commitment of the mentally ill "is analogous to a criminal arrest and must therefore be

8   supported by probable cause." *Maag v. Wessler*, 960 F.2d 773, 775 (9th Cir. 1992) (citations

9   omitted).  In the context of § 5150, California courts have established the following standard:

10

11

12

13

14

15

16

> To constitute probable cause to detain a person pursuant to section 5150, a state of facts must be known to the peace officer (or other authorized person) that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself or is gravely disabled. In justifying the particular intrusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion. Each case must be decided on the facts and circumstances presented to the [detaining person] at the time of the detention, and the [detaining person] is justified in taking into account the past conduct, character, and reputation of the detainee.

17   *Heater v. Southwood Psychiatric Ctr.*, 42 Cal. App. 4th 1068, 1080 (1996) (quoting *People v.*

18   *Triplett*, 144 Cal. App. 3d 283, 286-87 (1983)).  "[M]ental disorder might be exhibited if a person's

19   thought processes, as evidenced by words or action or emotional affect, are bizarre or inappropriate

20   for the circumstances." *Triplett*, 144 Cal. App. 3d at 288.

21       In this case, Plaintiff's allegations are largely inapplicable to the question of whether

22   Defendants violated his Fourth Amendment rights.  Plaintiff's allegations that Defendant Brand

23   routinely "request[s] the protection of police officers before making initial face-to-face contact with

24   persons" is irrelevant to the question of whether she had probable cause to detain him.  Indeed, the

25   mere presence of police officers in the clinic does not constitute a constitutional violation.

26   Similarly, while Plaintiff recites his own state of mind in detail, such information is irrelevant to the

27   probable cause analysis because it does not indicate what was apparent to Defendant Brand at the

28   time of her decision to detain him.  "[P]robable cause must be supported by 'the facts and

circumstances *within the knowledge* of the arresting [official]' at the moment of arrest." *Landry v. Berry*, No. C 10–04707 RS, 2011 WL 4532877, at *6 (N.D. Cal. Sept. 30, 2011) (quoting *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005)).

In terms of the facts alleged in the complaint that are relevant to Brand's decision, it is a close call whether Plaintiff has stated a claim for lack of probable cause.  For example, Plaintiff alleges that he came to the Clinic to speak with a peer counselor "about his frustration and anxiety due to (then) recent emotional trauma," FAC ¶ 23, that he "described his state of hunger, fatigue and associated frustrations and asked the receptionist to talk with a 'peer counselor,'" FAC ¶ 27, that he waited for a counselor to arrive, FAC ¶¶ 29-30, that he accepted a box of facial tissues, FAC ¶ 32, that Brand indicated a "concern 'that [he] might want to hurt himself,'" FAC ¶ 60, and that Plaintiff responded to Brand's statement by saying he "came here for help" regarding "emotional issues," FAC ¶ 67, but that he was "no danger to [him]self, or to [her], or to anyone else."  FAC ¶ 75. Plaintiff indicates that upon hearing Brand's statement that there was concern he might hurt himself, Plaintiff "assumed that his prior statements addressed to the [Clinic] receptionist had been taken out of context, misconstrued and exaggerated."  FAC ¶ 61.  Plaintiff further alleges that he believed he was being detained and that he asked, "Why are there guards at the door?"  FAC ¶ 72.  Brand assured him that the officers were only "here for routine protection," FAC ¶ 73, but Plaintiff refused to speak further and asserted a "right to consult counsel before making any further statements," FAC ¶¶ 78-79.  Finally, Plaintiff states that he refused to sign a "contract for safety" and stated that he required an attorney before signing anything.  FAC ¶¶ 80, 82.

Drawing all facts and reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has sufficiently pled a cause of action under the Fourth Amendment that Defendant Brand lacked probable cause to detain him.[3]  Cases finding probable cause under § 5150 have typically involved far more severe symptoms of mental disorder than the Plaintiff's complaint indicates here. *See, e.g.*, *Triplett*, 144 Cal. App. 3d at 288 (finding probable cause where person was tearful,

---

[3] Even though Plaintiff asserts this cause of action against Brand only in her official capacity, FAC at 17, the Court construes the complaint liberally to include a claim in her individual capacity as well.

United States District Court

For the Northern District of California

1   intoxicated, and displayed "obvious physical signs of a recent suicide attempt"); *Bias v. Moynihan*,

2   508 F.3d 1212, 1221 (9th Cir. Cal. 2007) (finding probable cause under § 5150 where the officer

3   "observed that Ms. Bias's thoughts were disconnected and she was visibly angry and appeared

4   agitated," and where the officer recalled prior instances of "disturbing behavior"); *Cotterill v. SF

5   City and County*, No. C 08-02295 JSW, 2009 WL 3398369, at *6 (N.D. Cal. Oct. 20, 2009) (finding

6   probable cause due to "Plaintiff's screaming and yelling, throwing things in her apartment, breaking

7   her windows, threatening to call the police on the police, and then suddenly becoming catatonic and

8   non-responsive").  In contrast, there are no allegations in Plaintiff's complaint (construed in

9   Plaintiff's favor) establishing that Plaintiff evinced signs of disordered thinking, verbal or physical

10  outbursts, or signs of previous or current attempts to harm himself.

11          With respect to the remaining defendants, for the reasons stated above, Plaintiff has not

12  stated a claim against Wee, Tureck and Medrano.  As the Court noted in its discussion of the City's

13  *Monell* liability, Plaintiff has not sufficiently pled final policymaking authority on behalf of these

14  three defendants such that he could state a claim against the City through their conduct in their

15  official capacities.  Further, construing the cause of action liberally as also encompassing a personal

16  capacity allegation, Plaintiff has failed to allege any facts supporting defendants' direct liability.

17  Plaintiff offers no allegations that Medrano, Tureck, or Wee were physically present on the day in

18  question or otherwise personally involved in the incident.  Plaintiff only cursorily alleges general

19  policies and "ratification" of Brand's conduct by these defendants, which is insufficient to establish

20  any direct participation on their part in the constitutional violation.  *See Humphries v. County of Los

21  Angeles*, 554 F.3d 1170, 1202 (9th Cir. 2009) ("Under § 1983, a supervisor is only liable for his own

22  acts.  Where the constitutional violations were largely committed by subordinates the supervisor is

23  liable only if he participated in or directed the violations."), *overruled on other grounds by Los

24  Angeles County, Cal. v. Humphries*, 131 S. Ct. 447 (2010).

25          Accordingly, the Court DENIES the motion to dismiss with respect to the Fourth

26  Amendment cause of action as to Brand and the City and GRANTS the motion as to Wee, Tureck

27  and Medrano without prejudice.

28

4.  Third Cause of Action – Fifth Amendment (Against All Defendants in Their Official Capacities)

Defendants assert that Plaintiff cannot state a claim under the Fifth Amendment because any questioning to which he was subject was not pursuant to any criminal proceeding or investigation, nor was it ever used in a criminal proceeding.  Defendants are correct.  In *Chavez v. Martinez*, the Supreme Court held that there can be no Fifth Amendment violation outside a criminal proceeding. 538 U.S. 760, 766 (2003).  More specifically, in this Circuit, "the Fifth Amendment has been violated only when government officials use an incriminating statement to initiate or prove a criminal charge."  *Stoot v. City of Everett*, 582 F.3d 910, 925 n.15 (9th Cir. 2009).  Here, Plaintiff alleges no facts relating to any criminal proceeding or investigation.  Accordingly, he fails to state a claim under the Fifth Amendment against any defendant.  The Court GRANTS Defendant's motion to dismiss this cause of action with prejudice.

5.  Second Cause of Action – First Amendment (Against City, Brand, Wee, Tureck, and Medrano)

Defendants argue that Plaintiff has failed to state a claim under the First Amendment.  The Court agrees.  Plaintiff's allegations establish no restriction of Plaintiff's First Amendment rights. First, he appears to partially restate his Fifth Amendment cause of action for interference with a right to remain silent, which the Court discussed above.  Second, with respect to his asserted "right to pursue psychological self-help,"  FAC ¶ 168, Plaintiff cites to no authority supporting a First Amendment right to any particular form of counseling.  Indeed, the FAC indicates that Defendants attempted to provide him with a form of counseling.  Accordingly, the Court GRANTS the motion to dismiss as to the second cause of action and grants Plaintiff leave to amend.

6.  Sixth Cause of Action – Due Process (Against Brand in Both Individual and Official Capacities)

Brand argues that Plaintiff has failed to state a claim under the Due Process Clause.  The Court agrees.  First, Plaintiff's allegations largely challenge Ms. Brand's conclusion that there was probable cause to detain him under § 5150, which is relevant only to his Fourth Amendment claim. *See* FAC ¶ 209 (Brand wrongly presumed probable cause); FAC ¶ 211 (Brand's assessment was

inadequate).  A statutory hold pursuant to § 5150 satisfies constitutional requirements.  *See Barrier v. County of Marin*, No. C 97-1337 FMS, 1997 WL 465201, at *3 (N.D. Cal. July 30, 1997) ("Due process does not require that a county provide a hearing for a person detained for seventy two hours under section 5150.") (citing *Doe v. Gallinot*, 486 F. Supp. 983, 993-94 (C.D. Cal. 1979) *affirmed*, 657 F.2d 1017 (9th Cir.1981) (finding hearing required for detentions beyond 72 hours, but that "[t]he initial 72 hours of detention is justified as an emergency commitment")); *see generally Duarte v. Begrin*, No. C 05-05223 MHP, 2007 WL 705053, at *5 (N.D. Cal. Mar. 2, 2007) ("Plaintiff's argument [that § 5150 is unconstitutional] is undeveloped and specious-Section 5150 is simply a codification of particular circumstances falling into well-established exceptions to the Fourth Amendment's warrant requirement.").

Apart from a dispute over probable cause, Plaintiff offers no allegations that Brand failed to follow the requisite procedures; instead, he merely quibbles with Ms. Brand's methodology, which does not rise to the level of a constitutional violation.  *See* FAC ¶¶ 215-16 (criticizing Brand's "medical model type emergency intervention" and suggesting statements Brand should have made to Plaintiff instead of those she did make).  Moreover, his allegations indicate that Defendant Brand completed the examination according to § 5150.  *See* FAC ¶ 102 (noting that Brand recited the phonetic sounds "Dee tee ess," "Dee tee oh," and "Gee Dee," which Defendants explain correspond to Danger to Self (DTS), Danger to Others (DTO), and Gravely Disabled (GD)); FAC ¶ 213 ("Brand's intervention and assessment were fixed upon the risk of suicide.").  Accordingly, he fails to state a claim under the Due Process Clause.  The Court GRANTS Defendant's motion to dismiss this cause of action and grants Plaintiff leave to amend.

> 7.    Eighth Cause of Action – Due Process (Against Medrano, Tureck, and Wee in Their Official and Individual Capacities)

Defendants argue that Plaintiff has failed to state a claim against Medrano, Tureck, and Wee for violation of due process.  Because this claim is derivative of the due process claim against Defendant Brand (as it is based on these Defendants' ratification of Ms. Brand's conduct), which the Court finds deficient as stated above, it similarly must be dismissed.  The Court GRANTS Defendants' motion to dismiss this cause of action and grants Plaintiff leave to amend.

8.      <u>Ninth Cause of Action – Equal Protection (Against All Defendants)</u>

Defendants argue that Plaintiff has failed to state a claim under the Equal Protection Clause. "To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994).

In the instant case, Plaintiff fails to invoke any cognizable class or group-based discrimination, nor does he set forth facts to state a claim for relief as a "class of one." *See Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 602 (2008) ("[W]hen it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a 'rational basis for the difference in treatment.'") (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  Plaintiff provides no factual basis for a claim that anyone else similarly situated for the purposes of § 5150's application was treated differently than himself and other members of the purported protected class.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (stating that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike") (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  Moreover, Plaintiff has alleged no discriminatory intent in his FAC.  He makes conclusory allegations that Defendants targeted "impoverished, hungry and transient persons of low social status within the Telegraph area," FAC ¶ 249, but provides no factual assertions supporting a claim that any such targeting was "at least in part 'because of,' not merely 'in spite of,' its *adverse* effects upon an identifiable group." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (quotations omitted) (emphasis added).

Accordingly, Plaintiff has failed to state a claim for relief under the Equal Protection Clause as to any Defendants.  The Court GRANTS Defendants' motion to dismiss this cause of action and grants Plaintiff leave to amend.

///

///

United States District Court

For the Northern District of California

9.      Qualified Immunity

Finally, Brand argues that even assuming liability under one of the federal claims above, she is entitled to qualified immunity as to all claims brought under § 1983.  To determine whether an official is entitled to qualified immunity, the court must decide (1) whether the facts alleged show the official's conduct violated a constitutional right; and (2) whether that right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *see also Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling *Saucier's* requirement that qualified immunity analysis proceed in a particular sequence).

In the instant case, Defendant Brand concedes that the law is clearly established, *see* Brand Mot. at 16.  Thus, she rests her qualified immunity claim solely on the contention that she had probable cause to detain Plaintiff, rather than on any claim that she was reasonably mistaken "mistake[n] as to what the law requires."  *Saucier*, 533 U.S. at 205.  In the instant case, the Court has already determined that Plaintiff has adequately alleged a lack of probable cause.  In addition, the facts as alleged and construed in Plaintiff's favor indicate that Defendant Brand detained Plaintiff with very little (if any) support for the conclusion that he was a threat to himself or others.  Indeed, the allegations indicate only that Plaintiff sought counseling and declined to sign a contract for safety, but that he expressly averred that he was not threat to himself or others and was not disordered in his thinking or verbal or physical expression.  Accordingly, while the Court is aware that qualified immunity is to be decided at the earliest possible point in the litigation deciding this issue in the context of a motion to dismiss is not appropriate given the allegations herein.  This does not preclude consideration on a motion for summary judgment based on evidence developed.  *See Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (if complaint alleges conduct no reasonable officer would believe is lawful, "discovery should be tailored specifically to the question of [the officer's] qualified immunity").  Brand's claim of qualified immunity thus fails for purposes of this 12(b)(6) motion.

///

///

10.     Fourth and Fifth Causes of Action – Negligence and Intentional Infliction of

Emotional Distress (Against Brand in Both Individual and Official Capacities)

Plaintiff asserts his fourth and fifth causes of action – for Negligence and Intentional

Infliction of Emotional Distress ("IIED") respectively – against Brand only.  Brand argues that she

is immune from all state law causes of action based on three sources of immunity.

a.      Government Code § 856(a)

California Government Code § 856 provides, in relevant part:

> (a) Neither a public entity nor a public employee acting within the
> scope of his employment is liable for any injury resulting from
> determining in accordance with any applicable enactment:
>       (1) Whether to confine a person for mental illness or addiction.
> . . .
> (b) A public employee is not liable for carrying out with due care a
> determination described in subdivision (a).
> (c) Nothing in this section exonerates a public employee from liability
> for injury proximately caused by his negligent or wrongful act or
> omission in carrying out or failing to carry out:
>       (1) A determination to confine or not to confine a person for
>       mental illness or addiction.

In *Tarasoff v. Regents of California*, the California Supreme Court held that § 856 "affords public

entities and their employees absolute protection from liability for 'any injury resulting from

determining in accordance with any applicable enactment [specifically including § 5150] ... whether

to confine a person for mental illness.'"  17 Cal.3d 425, 447 (1976).  The Court held further that "the

scope of the immunity extends not only to the final determination to confine or not to confine the

person for mental illness, but to all determinations involved in the process of commitment."  *Id*. at

448 (finding that § 856 insulated a doctor from liability for failing to confine a patient who stated he

intended to kill a girl and later killed that girl).  Regarding § 856's exceptions from immunity, the

Court explained that the exceptions only cover negligence or other tortious conduct that occurs *after*

a decision has been made in the course of carrying out that decision.  *Id*. at 449 ("[C]areless or

wrongful behavior subsequent to a decision respecting confinement [] is stripped of protection by

the exception in section 856."); *McDowell v. County of Alameda*, 88 Cal. App. 3d 321, 327 (1979)

("[S]ection 856 provides an absolute immunity only for injuries resulting from the determination

United States District Court

For the Northern District of California

1    whether to confine but limits that immunity when a public entity or public employee negligently

2    carries out that determination.").

3        In the instant case, Plaintiff's allegations amount to nothing more than a claim that she failed

4    to correctly discharge her duties under § 5150 in deciding that Plaintiff should be detained, and

5    consequently that her determination that he should be involuntarily detained was incorrect.

6    Plaintiff's allegations focus solely on Brand's decision, not on any alleged negligent conduct

7    subsequent to that decision. *See* FAC ¶ 189 ("Brand's act of making application for Plaintiff's

8    involuntary psychiatric evaluation without probable cause as alleged herein was an act of

9    negligence); FAC ¶¶ 193-205 (alleging IIED in the course of Brand's examination of Plaintiff to

10   determine whether to confine him); Opp. to Brand's Mot. at 25 ("Plaintiff's allegations are properly

11   construed to assert that Brand negligently or wrongfully applied for Plaintiff's emergency

12   evaluation."). As such, the immunity of § 856(a) applies. *See Hall v. City of Fremont*, No. C

13   09–1629 JL, 2011 WL 1990627, at *11 (N.D. Cal. May 23, 2011) ("Officer Miskella's

14   determination that Plaintiff should be detained for evaluation pursuant to § 5150 also falls within the

15   immunity granted by § 856. His only conduct occurred during "the process of commitment" and

16   there is no evidence of any negligent or wrongful conduct during the course of Plaintiff's

17   confinement.").

18            b.     Government Code § 855.6

19   California Government Code § 855.6 provides,

20            Except for an examination or diagnosis for the purpose of treatment,
             neither a public entity nor a public employee acting within the scope
21           of his employment is liable for injury caused by the failure to make a
             physical or mental examination, or to make an adequate physical or
22           mental examination, of any person for the purpose of determining
             whether such person has a disease or physical or mental condition that
23           would constitute a hazard to the health or safety of himself or others.

24   Because the Court has already determined that § 856 applies here, it need not determine whether

25   855.6 would also provide a duplicate source of immunity. However, it appears that it would. In this

26   case, the core of Plaintiff's allegations is that Defendant Brand's examination of him was incorrect,

27   and that her resulting decision to apply for confinement under § 5150 was unsupported by probable

28   case. As such, § 855.6 would appear to give Defendant Brand immunity from any conduct

1  rendering her mental examination inadequate.  *See Kravitz v. State of California*, 8 Cal. App. 3d

2  301, 306-07 (1970) (applying § 855.6 to "a situation in which, as the result of a faulty diagnosis, a

3  mentally defective person is either not placed in custody or is released therefrom and therefore

4  causes harm to another or to himself"); *Lucas v. City of Long Beach*, 60 Cal. App. 3d 341, 350

5  (1976) (failure to provide a medical examination of an intoxicated prisoner who later committed

6  suicide is covered by § 855.6).

7        c. <u>Welfare & Institutions Code § 5278</u>

8     Section 5278 provides: "Individuals authorized under this part to detain a person for 72-hour

9  treatment and evaluation pursuant to Article 1 (commencing with Section 5150) . . . shall not be held

10  either criminally or civilly liable for exercising this authority in accordance with the law."  Like §

11  856, § 5278 provides an exception for negligence during the course of the 72-hour hold, but the

12  immunity covers conduct by an officer in exercising the authority to detain.  *See Gonzalez v.*

13  *Paradise Valley Hospital*, 111 Cal. App. 4th 735, 741 (2003) ("The protected conduct is confined to

14  the exercise of statutory authority to detain, evaluate and treat against the patient's wishes, and does

15  not extend to the manner in which evaluation and treatment are carried out.").  As discussed above,

16  Plaintiff's allegations concern Brand's exercise of statutory authority to detain, not any conduct by

17  healthcare providers during his detention.  As such, § 5278 would appear to provide yet another

18  source of immunity against Plaintiff's state law causes of action.

19     Accordingly, the Court GRANTS Defendant Brand's motion to dismiss Plaintiff's Fourth

20  and Fifth causes of action under state law with prejudice.

21     11. <u>Seventh Cause of Action – California Constitution art. 1, §§ 1 and 13 (Against Brand</u>

22        <u>in Both Individual and Official Capacities)</u>

23     Brand argues that Plaintiff has failed to state a claim under the California Constitution.

24  Plaintiff alleges that Brand's "intervention as alleged herein above denied Plaintiff's rights to seek

25  peer counseling, to freedom from unreasonable seizure and search and to dignity and privacy and

26  due process as guaranteed to Plaintiff by Article 1, §§1 and 13 of the Constitution of the State of

27  California."  FAC ¶ 232.  Section 1 states, "All people are by nature free and independent and have

28  inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing,

United States District Court

For the Northern District of California

1    and protecting property, and pursuing and obtaining safety, happiness, and privacy."  Section 13

2    states, "The right of the people to be secure in their persons, houses, papers, and effects against

3    unreasonable seizures and searches may not be violated; and a warrant may not issue except on

4    probable cause, supported by oath or affirmation, particularly describing the place to be searched

5    and the persons and things to be seized."

6           As Brand points out, the California Constitution provides no private right of action for

7    damages for alleged violations of Art. 1, § 13.  *See Manning v. City of Rohnert Park*, No. C

8    06-03435 SBA, 2007 U.S. Dist. LEXIS 31301, at *2 (N.D. Cal. Apr. 13, 2007) ("Neither the plain

9    language of the article I, section 13, nor the available legislative history indicate an intent on behalf

10   of the California Legislature to permit the recovery of monetary damages for its violation.").  In

11   addition, much of § 1 similarly fails to convey a private right of action.  *See Katzberg v. Regents of*

12   *Univ. of Cal.*, 29 Cal.4th 300, 315 n.15 (2002) ("No case ever has held that [§ 1] enunciating the

13   inalienable right to obtain safety and happiness is self-executing in the sense that it gives rise, in and

14   of itself, to a private right of action for damages or an affirmative duty on the part of the state to take

15   particular steps to guarantee the enjoyment of safety or happiness by all citizens.") (citations

16   omitted).

17          Section 1 does permit a private right of action to enforce the right of privacy.  *See, e.g.*, *In re*

18   *Qawi*, 32 Cal.4th 1, 14 (2004) (considering a claim for violation of the right to privacy under the

19   California Constitution).  However, it is not clear from the face of Plaintiff's complaint whether he

20   intended to assert a claim for violation of the right to privacy and, if so, what the basis of his claim

21   would be.  Nor is it clear what kind of relief he seeks.  For example, Paragraph 2 of the FAC

22   indicates that Plaintiff seeks damages for "personal injuries" through his California constitutional

23   claim.  FAC ¶ 2 ("Plaintiff sustained personal injuries for which he asserts additional claims arising

24   under the Constitution of California, Article I, §§ 1 and 13.").  However, a claim for damages under

25   the California Constitution may be subject to certain state law immunities described above.  *See*

26   *Richardson-Tunnell v. School Ins. Program for Employees (SIPE)*, 157 Cal. App. 4th 1056, 1066

27   (2007) ("The constitutional right to privacy does not limit the scope of a preexisting statutory

28

1    immunity.") (citing *Jacob B. v. County of Shasta*, 40 Cal. 4th 948, 961 (2007) ("[T]he litigation

2    privilege applies even to a constitutionally based privacy cause of action.")).

3          Thus, the Court GRANTS Defendant's motion to dismiss this cause of action without

4    prejudice.

### III.    CONCLUSION

6          For the reasons set forth above, the Court GRANTS in PART and DENIES in PART

7    Defendants' motions to dismiss.  Specifically:

8    1.    The Court dismisses Plaintiff's Third (Fifth Amendment), Fourth (Negligence), and Fifth

9          (IIED) causes of action with prejudice.

10   2.    The Court dismisses Defendants Meyerson and Tribble with prejudice.

11   3.    The Court dismisses Plaintiff's Second (First Amendment), Sixth (Due Process), Seventh

12         (California Constitution), Eighth (Due Process), and Ninth (Equal Protection) causes of

13         action, but gives Plaintiff leave to amend his complaint.

14   4.    The Court denies the motion to dismiss the City as a defendant.

15   5.    The Court denies the motion to dismiss Defendant Brand on the basis of qualified immunity.

16   6.    The Court denies Defendants' motions to dismiss Plaintiff's First cause of action under the

17         Fourth Amendment as to Defendants Brand and the City, but grants the motion to dismiss as

18         to Defendants Wee, Tureck, and Medrano with leave to amend.

19         Plaintiff shall file an amended complaint no later than January 13, 2012.

20         For Mr. Haines's benefit, the Court directs his attention to the Handbook for Pro Se

21   Litigants, which is available along with further information for the parties on the Court's website

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

United States District Court
For the Northern District of California

located at http://cand.uscourts.gov/proselitigants.  Mr. Haines may also contact the Legal Help

Center, 450 Golden Gate Avenue, 15th Floor, Room 2796, Telephone No. (415) 782-9000 extension

8657, for advice regarding his claims.

      This order disposes of Docket Nos. 25 and 29.


      IT IS SO ORDERED.


Dated:  December 2, 2011

_____
EDWARD M. CHEN
United States District Judge

**United States District Court**
For the Northern District of California